IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LOVETAP, LLC,

   Plaintiff,

    v.

CVS HEALTH CORPORATION, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:16-CV-3530-TWT

**OPINION AND ORDER**

This is a trademark infringement action. It is before the Court on the Defendants CVS Health Corporation, CVS Pharmacy, Inc., and MinuteClinic, LLC's (collectively "CVS") Motion to Dismiss [Doc. 19-1]. For the reasons stated below, the Defendants' Motion to Dismiss [Doc. 19-1] is DENIED.

**I. Background**

In 2012, the Plaintiff Lovetap, LLC's founder and sole employee, Anna Tucker, began developing the software application called "Life", and eventually published the Life app through Lovetap in 2013.[1] The Life app allows users to log, keep track of,

---

[1] Compl. ¶ 11.

and analyze virtually all matters relating to their personal health and wellness, such as symptoms, mood, weight, nutrition, sleep, sex, fitness, medication, general health, menstrual cycles, fertility, ovulation, and pregnancy. The Life app also allows users to setup and create reminders for prescription refills, daily reminders for medication, daily reminders for vitamins, physician appointments, self-exams, menstrual days, fertility windows, and ovulation.[2] The app is currently offered for sale through the Apple App Store and sold in over 150 countries, including the United States.[3] Since it was published, the app has grown quickly in popularity, and is now consistently one of the top 10 most downloaded apps in the U.S. App Store's Health & Fitness Category.[4]

On September 3, 2013, Lovetap filed a U.S. federal trademark application for a geometric heart design as its primary logo (the "Lovetap Mark"), an example of which is shown below:[5]

---

[2]   Id. at ¶ 12.

[3]   Id. at ¶ 13.

[4]   Id. at ¶ 14.

[5]   Id. at ¶¶ 15-16.



The trademark application stated that it was for "Computer application software for mobile phones, namely, software for tracking and predicting menstrual cycles, ovulation, fertility, and women's health and wellness issues" in Class 9. The Lovetap Mark eventually registered on October 21, 2014.[6]

CVS, which operates a retail and health care business, initiated a rebranding of its corporate identity in 2014.[7] The result was a heart-shaped design as the companies' logo, an example of which is included below:[8]



---

[6]    Id. at ¶ 16.

[7]    Id. at ¶ 21.

[8]    Id. at ¶ 23. More examples of the Defendants' use of their heart-shaped logo are included in the Complaint and Exhibit A to the Defendants' Motion to Dismiss [Doc. 19-2].

Since September 2014, CVS has applied for federal registration of twenty-six trademarks that include the geometric heart design of the CVS logo (the "CVS Trademarks").[9] Since then, eleven of those applications have registered, the earliest of which did so on June 21, 2016.[10]

On September 20, 2016, Lovetap filed this action against CVS alleging trademark infringement under federal and state law, and that CVS' use of the CVS logo dilutes the Lovetap Mark pursuant to Georgia's dilution statute, O.C.G.A. § 10-1-451(b). The Defendants now move to dismiss Lovetap's state law dilution claim.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[11] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[12] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most

---

[9] Id. at ¶ 29.

[10] Copies of the registration certificates are included in Exhibit A to the Defendants' Motion to Dismiss [Doc. 19-2].

[11] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[12] Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

favorable to the plaintiff.[13] Generally, notice pleading is all that is required for a valid complaint.[14] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[15]

### III. Discussion

The entirety of the Defendants' argument for dismissal rests on § 1125(c)(6) of the Trademark Dilution Revision Act, which states that "[t]he ownership by a person of a valid registration…on the principal register under this chapter shall be a complete bar to" a state law dilution claim.[16] Lovetap, on the other hand, argues that because it is challenging the validity of the Defendants' trademark registration, dismissal would be inappropriate at this time. The Defendants, meanwhile, argue that allowing the Plaintiff's dilution claim to move forward simply because it has challenged the validity of the registration would undermine the purpose of § 1125(c)(6). Thus, the

---

[13] See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[14] See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[15] See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

[16] 15 U.S.C. § 1125(c)(6).

only question before the Court at this time is whether Lovetap's state law dilution claim is subject to dismissal despite the fact that Lovetap is challenging the validity of, and seeks to cancel, the Defendants' federal trademark registrations. The Court holds that it is not.

The Court begins with the language of the statute. Section 1125(c)(6) provides an affirmative defense which bars all state law dilution claims if a trademark is federally registered. But the statute states that only "valid registration[s]" enjoy this protection. "It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed."[17] The Court will not presume that Congress includes extraneous verbiage in the laws that it enacts; each word and phrase is considered to be the result of a deliberate policy choice. The validity of a trademark must, therefore, hold at least some value in determining the availability of § 1125(c)(6) as a defense. This means that a successful challenge to a trademark registration's validity would vitiate the Defendants' reliance upon § 1125(c)(6).[18]

---

[17]   Inhabitants of Montclair Twp. v. Ramsdell, 107 U.S. 147, 152 (1883).

[18]   15 U.S.C. § 1115(b) states that the validity of a registration shall become "incontestable," and the registration itself shall become "conclusive evidence of the validity of the registered mark" if it meets certain conditions, including continual use

All that remains is to define validity in the context of the statute. Lovetap suggests that "valid" means only those registrations that are "not subject to cancellation."[19] Not only does the Court find this to be the only reasonable interpretation of the statutory language, but it has also enjoyed the consistent support of other federal courts.[20] After all, courts must not only presume that Congress intended for each word to have meaning, but also that it "intended the ordinary meaning of the words it used…"[21] And nothing could be more plain, given its context, than that the word "valid" means a registration that meets all of the law's requirements, that bears up to scrutiny, and would survive someone challenging it.

---

for a period of five consecutive years. Since this provision does not apply to the trademarks at issue here, the Court's Opinion does not address the effect of this section on the Court's holding.

[19]   Pl.'s Resp. to Defs.' Mot. to Dismiss, at 3.

[20]   See Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 635 n.4 (9th Cir. 2008) ("...if Mattel can succeed in obtaining that cancellation, the bar to state unfair competition actions found in 15 U.S.C. §1125(c)(6) will be inapplicable."); Jet, Inc. v. Sewage Aeration Systems, 165 F.3d 419, 424 (6th Cir. 1999) ("However, Jet has sought to add a count for cancellation of SAS's federal trademark registration. If Jet were successful on that claim, SAS would lose its affirmative defense..."); Viacom Inc. v. Ingram Enterprises, Inc., 141 F.3d 886, 891 n.8 (8th Cir. 1998) (holding that though § 1125(c)(6) "provides a 'complete bar' to state law dilution claims, Viacom could block this defense, for example, by establishing that Ingram does not own a 'valid registration.'").

[21]   Gonzalez v. McNary, 980 F.2d 1418, 1420 (11th Cir. 1993).

The Defendants do not expressly offer a contrary definition, but instead rely on "practical effect" and "congressional intent" to argue that Lovetap's challenge should still be subject to the § 1125(c)(6) defense.[22] The Defendants argue that it was Congress' intent to "(i) incentivize federal registration of marks, and (ii) prevent states from regulating the use of federally registered marks..."[23] The Defendants contend that the only way to achieve this intent, and thus the only proper interpretation of the statute, is to provide a sort of super defense in which a defendant must merely show that the trademarks are registered to avoid all dilution claims, regardless of whether those registrations are valid or not. This would of course render the word "valid" completely superfluous, which as discussed above, is a non-starter in statutory interpretation.

Perhaps realizing this, the Defendants attempt to give meaning to the word "valid" by distinguishing between different types of invalidity. For example, the Defendants argue that the following would be situations where a challenge to validity of a registration would not be subject to a § 1125(c)(6) defense:

(i) when a registration has not been timely renewed but has not yet been formally declared abandoned by the Trademark Office,

---

[22] Defs.' Reply to Mot. to Dismiss, at 5 [Doc. 21].

[23] Id. at 3 (quoting H.R. Rep. No. 112-647 (2012)).

>  (ii) when a court has enjoined a registered mark from use but the registration has not been cancelled, either because the plaintiff failed to seek cancellation or because the Trademark Office was not directed to cancel the registration, or
> (iii) when a foreign registration that serves as a basis for U.S. registration under Sections 44 and 66 of the Lanham Act is not renewed, and the U.S. registration becomes invalid as a result, but no notice is provided to the Trademark Office.[24]

The Defendants contrast these situations with the present case, which they say is barred by the super defense § 1125(c)(6).

But the Defendants offer little in the way of support for why these examples are any different than the present case. There is certainly nothing in the language of the statute that makes a distinction between different types of validity. The registrations in all of these cases are potentially invalid, and they would all require adjudication on the merits of the validity challenge before determining whether § 1125(c)(6) applied or not. The Defendants give no other reason to treat those situations differently than their assurance that "Congress certainly would not have intended such active but invalid federal registrations [as their examples above] to serve as a basis for the preemption set forth in § 1125(c)(6)."[25] In other words, the Defendants advocate for a much more complicated reading of the statute with no more support than their own

---

[24] <u>Id.</u> at 5.

[25] <u>Id.</u>

certainty that they are right. But as Ockham would say, it is the simpler explanation that is usually the correct one.

Not only is it simpler to give a broad reading to the word "valid," but this also coincides with a much simpler explanation of Congress' intent than the one the Defendants offer. The likely purpose of § 1125(c)(6) is not to provide a "super defense" barring all dilution claims, but to preempt the use of dilution claims against valid trademarks. In a dilution claim, a plaintiff is essentially arguing that a defendant's use of the defendant's trademark, even if valid and in an area completely unrelated to the plaintiff's activities, is so pervasive that it saps the usefulness of the plaintiff's trademark. Importantly, a trademark does *not* have to be infringing to dilute. Absent the defense of § 1125 (c)(6), therefore, dilution claims could apply to a junior trademark even if it is validly held.

As stated above, the Defendants argued that Congress enacted § 1125(c)(6) to "(i) incentivize federal registration of marks, and (ii) prevent states from regulating the use of federally registered marks..."[26] In one sense, this is partially true, but it is incomplete. The language of the statute is clear that Congress' intent[27] was to prevent states from regulating the use of *valid* federally registered marks. In order to

---

[26]    Id. at 3 (quoting H.R. Rep. No. 112-647 (2012)).

[27]    Or at least what Congress actually enacted into law.

"incentivize federal registration of marks,"[28] Congress wanted to prevent holders of *valid* registrations from being subject to potential liability for dilution. That does *not* mean that Congress intended to give this defense to invalid registrations. Thus, notwithstanding the fact that "congressional intent" is found primarily in the language of a statute and not speculation as to the collective intentions of 535 individuals, the Defendants' arguments based on intent do not hold much merit on their own terms either.

Nor do the Defendants' concerns over the "practical effect" of the Plaintiff's interpretation convince the Court that it is incorrect. The Defendants argue that the Court's holding today "eviscerates the protections afforded by the statute..."[29] In one sense, it is true that the Court's interpretation means the Defendants cannot escape liability in the face of a challenge to their registration by merely pointing to their registration. But as discussed above, the statute never gave the Defendants that procedural advantage anyway. The Defendants may understandably be upset by this, but the Court is just the messenger here. Should they wish to enjoy such an advantage, they may always lobby Congress to change the law.

---

[28]    Id.

[29]    Defs.' Mot. to Dismiss, at 6.

The Court's ruling today does not mean, however, that a plaintiff can merely plead for cancellation and make it to discovery with no support whatsoever. This is not an either/or situation. If a plaintiff's cancellation claim is baseless, or if a plaintiff cannot plead sufficient facts to support its allegations, a defendant can always file a motion to dismiss that claim. Perhaps tellingly, the Defendants have not done so here.

Congress was clear, through the language it enacted into law, that it intended for § 1125(c)(6) to provide a complete bar to state dilution claims against valid registrations. The inclusion of "valid," based upon the plain meaning of the word, necessarily means that § 1125(c)(6) does not apply to those federal registrations that are *in*valid. As such, the Court finds that when there is a question as to the validity of a federally registered trademark, and a plaintiff seeks to cancel that trademark with a well-pleaded complaint, § 1125(c)(6) does not mandate immediate dismissal of a plaintiff's related state claim for dilution.

### IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss [Doc. 19-1] is DENIED.

SO ORDERED, this 31 day of July, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge